■ In the Matter of NATIONWIDE MUTUAL INSURANCE COMPANY, Respondent, v GLORIA JOSEPH-SANDERS, Respondent, and AUTOONE INSURANCE COMPANY, Appellant, et al., Respondents. [996 NYS2d 57]—

In a proceeding pursuant to CPLR article 75, inter alia, to permanently stay arbitration of an uninsured motorist claim, AutoOne Insurance Company appeals from (1) an order of the Supreme Court, Kings County (Kurtz, Ct. Atty. Ref.), dated March 1, 2013, and (2) an amended order of the same court (Rothenberg, J.) dated November 21, 2013, which, after a hearing, granted the petition and permanently stayed arbitration.

Ordered that the appeal from the order dated March 1, 2013, is dismissed, as that order was superseded by the amended order dated November 21, 2013, and has been vacated on the appeal from the amended order; and it is further,

Ordered that the amended order dated November 21, 2013, is reversed, on the facts, the petition is denied, the proceeding is dismissed, and the order dated March 1, 2013, is vacated; and it is further,

Ordered that one bill of costs is awarded to the appellant.

On January 4, 2012, the respondent, Gloria Joseph-Sanders, allegedly sustained injuries when her vehicle was struck in the rear by a hit-and-run vehicle. As a result of the rear-end colli-

sion, her vehicle was propelled into the rear of a vehicle operated by the additional respondent Burcin Yalcin, which was propelled into the rear of a vehicle operated by the additional respondent Dawn Marie Vega. Joseph-Sanders made a claim for uninsured motorist benefits and, thereafter, the petitioner, Nationwide Mutual Insurance Company (hereinafter Nationwide), commenced this proceeding seeking, inter alia, to permanently stay the arbitration based upon, among other things, its claim that the additional respondent Melvin Hammer operated the offending hit-and-run vehicle, and that the offending vehicle was insured by the additional respondent-appellant, AutoOne Insurance Company. Thereafter, the Supreme Court referred the matter to a special referee for a hearing to determine whether Hammer's vehicle was involved in a hit-and-run collision with Joseph-Sanders's vehicle. In an order dated March 1, 2013, the Supreme Court granted the petition to stay arbitration, based upon its determination that "the credible evidence adduced at the hearing established that the vehicle owned by Melvin Hammer and insured by AutoOne was involved in the subject accident."

In an order dated November 21, 2013, the Supreme Court amended the order dated March 1, 2013, by adding the following language: "This constitutes the decision and order of the court." AutoOne appeals, contending that the credible evidence did not support the Supreme Court's determination that Hammer operated the hit-and-run vehicle involved in the subject accident.

"In reviewing a determination made after a hearing, the power of this Court is as broad as that of the hearing court, and this Court may render the judgment it finds warranted by the facts, bearing in mind that in a close case, the hearing court had the advantage of seeing the witnesses and hearing the testimony" (*Matter of Progressive Specialty Ins. Co. v Lubeck*, 111 AD3d 947, 948 [2013]; *see Baba-Ali v State of New York*, 19 NY3d 627, 640 [2012]; *Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Matter of AutoOne Ins. Co. v Fernandez*, 119 AD3d 677 [2014]; *Matter of GEICO v Selin*, 119 AD3d 568 [2014]; *Matter of Liberty Mut. Ins. Co. v Vella*, 83 AD3d 716, 717 [2011]; *Matter of New York Cent. Mut. Fire Ins. Co. v Vento*, 63 AD3d 841, 844 [2009]).

The special referee's determination that Hammer was involved in the subject motor vehicle accident was not supported by any credible evidence (*see Matter of Progressive Specialty Ins. Co. v Lubeck*, 111 AD3d at 949). Joseph-Sanders and Yalcin testified at the hearing that, immediately after the

collision, the driver of the offending vehicle got out of his green Ford Taurus and apologized to Joseph-Sanders, and that the driver was still present at the accident scene when ambulances arrived. Joseph-Sanders and Yalcin also testified that they exchanged information with each other, as well as with Vega. The original police accident report, which was stipulated into evidence, did not indicate the presence of a hit-and-run vehicle that caused a chain collision, but instead implicated Joseph-Sanders as the cause of the accident. As such, there was no evidence recovered from the scene of the accident linking Hammer's vehicle to the accident. Neither Yalcin nor Joseph-Sanders offered any explanation for not taking any steps to ascertain the identity of the driver of the offending vehicle, or license plate number of that vehicle, at the scene of the accident (*see id.* at 948).

Yalcin testified that she identified Hammer's vehicle, a green Ford Taurus, as the offending vehicle, upon observing it parked in the vicinity of the accident location a day after the accident. Even so, she did not record the license plate number or take any photographs of the vehicle at that time, or at any time prior to meeting Joseph-Sanders and Vega at a police station three or four days after the accident to amend the police report to include the offending vehicle. Indeed, the amended police accident report does not include the license plate number of Hammer's vehicle.

Joseph-Sanders and Yalcin testified that the offending vehicle, after striking the rear of the Joseph-Sanders vehicle, and in the presence of EMT workers and a crowd of people, backed up over a curb and struck a house. Yet, Yalcin's photos of Hammer's vehicle only showed slight scratches at the front of Hammer's vehicle, which was consistent with Hammer's testimony that his vehicle had "wear and tear."

Yalcin's in-court identification of Hammer, more than one year after the accident, was not credible. She testified that she only observed the other drivers as she "peeked out" from inside her car. Moreover, she and Joseph-Sanders described the driver of the offending vehicle as a "very older" or elderly man with a long beard and wearing traditional Hasidic clothing. Yet, in court, Hammer did not have a beard, did not dress in Hasidic clothing, and testified that he was not and has never been Hasidic. Joseph-Sanders, who spoke with the driver of the offending vehicle at the scene of the accident, testified that she was only able to recognize Hammer as the driver of the offending vehicle by his walk with a limp.

Hammer consistently testified that his vehicle was not

involved in the subject collision. Even though Hammer admitted that he applied for a new insurance policy on January 5, 2012, the day after the accident, the referee also heard evidence that Hammer's insurance policy coincidentally was set to expire on January 11, 2012, and that he was seeking a cheaper rate of insurance.

Since there was no credible evidence linking Hammer's vehicle to the subject collision, Nationwide's petition to stay arbitration of Joseph-Sanders's uninsured motorist claim should have been denied, and the proceeding dismissed (see Matter of Allstate Ins. Co. v Stricklin, 93 AD3d 717 [2012]). Dillon, J.P., Hall, Austin and Barros, JJ., concur.